# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

CALVIN D. STRANGE, JR.,       )
                                  )
        Plaintiff,          )
                                  )       **Civil Action No. 3:12-cv-01264**
        v.                 )       **Judge Nixon / Knowles**
                                  )
CAROLYN W. COLVIN,         )
**Acting Commissioner of Social Security,**[1]   )
                                  )
        Defendant.        )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on pro se Plaintiff's Motion for Judgment on the Administrative Record.[2]  Docket No. 26.  Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed.  Docket No. 39.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Although Plaintiff entitles his motion "Motion for Judgment," this motion will be construed by the Court as a Motion for Judgment on the Administrative Record.

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff, pro se, filed his application for DIB and SSI on January 25, 2010 and February 12, 2010 respectively, alleging that he has been disabled since March 23, 2001, due to herniated discs, "tumors of the spine," and "tears of the spine."  Docket No. 22 , Attachment ("TR"), TR 69, 153, 187.  Plaintiff's applications were denied both initially (TR 91, 96) and upon reconsideration (TR 93, 106).  Plaintiff subsequently requested (TR 80, 99) and received (TR 126) a hearing.  Plaintiff's waived his right to appear in person at his hearing, as he was incarcerated, and his hearing was conducted via telephone on March 23, 2012 and May 11, 2012, by Administrative Law Judge ("ALJ") Candace Shaughnessy.  TR 151-52, 411, 473.  Plaintiff and vocational experts ("VEs"), William Harpool and Tina Stambaugh testified.  TR 411, 473.

On May 25, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 32.  Specifically, the ALJ made the following findings of fact:

1.  The claimant has not engaged in substantial gainful activity since January 22, 2010, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: degenerative disc disease of cervical spine and degenerative disc disease of lumbar spine (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he requires a sit/stand option every 30-60 minutes, which takes no more than 1-5 minutes without his leaving the work station.  He is limited to occasional bending but no crawling, no climbing ladders, ropes or scaffolds, and no work around unprotected heights.  Further, the claimant is limited to unskilled tasks due to subjective complaints of pain in neck and left upper extremity, back, and lower extremities.

5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.      The claimant was born on February 7, 1965 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.      The claimant has not been under a disability, as defined in the Social Security Act, since January 22, 2010, the date the application was filed (20 CFR 416.920(g)).

TR 18-31.

Plaintiff timely filed a request for review of the hearing decision.  TR 11.  On November 19, 2012, the Appeals Council issued a letter declining to review the case (TR 7-9), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which

5

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff, pro se, essentially contends that the ALJ erred by: (1) not considering all of the relevant evidence in determining that Plaintiff was not disabled; (2) finding that Plaintiff did not meet Listing 1.04, "Disorders of the Spine"; and (3) finding that Plaintiff's subjective complaints of pain were not fully credible. Docket No. 27. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Evidence Not Considered by the ALJ

Plaintiff argues that the record considered by the ALJ was incomplete, such that the ALJ could not have considered all the relevant evidence before rendering a decision. Docket No. 27. Specifically, Plaintiff contends that "there is near 100 missing pages," 75 of which he avers are medical records. *Id.* at 3. Plaintiff particularly notes the absence of the following documents, which he contends constitute material evidence: an MRI taken in August 2003 and a nerve conduction and electromyography study. *Id.* at 11. Plaintiff states, "due to the insufficient contents of the record allow the plaintiff an opportunity to present this argument orally in open court prior to the courts [*sic*] ruling, or otherwise reverse the judgment." *Id.* at 16.

Defendant responds that, at his hearing, Plaintiff specifically acknowledged to the ALJ that she had all the relevant records. Docket No. 39, p. 7, *referencing* TR 481. Defendant essentially contends that Plaintiff's explicit acknowledgment that the ALJ had all the pertinent records precludes his argument that the ALJ did not have, and thereby did not consider, all of his

relevant records.  *Id.*

Although Plaintiff argues that reversal or remand is necessary because the ALJ could not have considered all of his relevant records, since the record contains "near 100 missing pages," the ALJ, after recounting with specificity the updated records she had received, explicitly asked Plaintiff, "Now, are you aware of any other records that you think I should have?"  TR 481.  To which, Plaintiff responded, "No, there shouldn't be any."  *Id.*  The ALJ confirmed, "Okay, I just wanted to make sure that I had as much as I did."  *Id.*  The ALJ then received into evidence and incorporated into the record Exhibits B1A through B2A, B1B through B16B, B1D through B8D, B1E through B15E, and B1F through B13F.  *Id.*  The ALJ received, incorporated, and considered all relevant records, as acknowledged by Plaintiff.  Plaintiff cannot now claim otherwise.

Additionally, although Plaintiff contends that reversal or remand is warranted because his 2003 MRI and nerve conduction studies are not in the record, information relating to this evidence is contained in the Exhibits specifically referenced by the ALJ as being received at Plaintiff's hearing and incorporated into the record.  *See* Ex. B3F, at TR 260-75.  Moreover, this evidence is discussed at length in the deposition of Dr. Jane Howard, M.D., a physician who reviewed Plaintiff's medical records (TR 261-64), and recounted by the ALJ (TR 26).  Discussing this evidence, the ALJ stated:

> MRIs performed in 2003 showed disc extrusion on left S1 nerve root (Exhibit B3F, p. 4).  MRI of the cervical spine reveals several bulging discs or protruding discs, which were most significant at the C5-C6 and C6-C7 level without evidence of central canal stenosis or neural foraminal stenosis (Exhibit B3F, p. 3).  The August 22, 2003 MRI of the thoracic spine was normal.  Further, the EMG nerve conduction study showed no peripheral neuropathy, no polyneuropathy, and no cervicolumbar

radiculopathy identified electrically. . . .

TR 26.

Because Plaintiff explicitly acknowledged to the ALJ that she had all the relevant records, and because the ALJ discussed the particular evidence that Plaintiff complains was absent from the record, Plaintiff's argument on this point fails.

## 2. Meeting or Equaling a Listing

Plaintiff next essentially contends that the ALJ erred in her determination that Plaintiff did not meet or medically equal one of the Listings in 20 CFR Part 404, Subpart P, Appendix 1. Docket No. 27. Specifically, Plaintiff appears to contend that he meets Listing 1.04, "Disorders of the Spine," because he has the following conditions: "impingement on nerve roots," spinal stenosis, herniated nucleus pulposus, lumbar spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and foramenal stenosis. *Id.* at 15. Plaintiff asserts that these conditions cause him "severe pain." *Id.*

Defendant responds that there is substantial evidence supporting the ALJ's determination that Plaintiff is not disabled. Docket No. 39. Specifically, Defendant asserts that the ALJ's determination is supported by the weight of the medical evidence and by Plaintiff's self-reported activities. *Id.*

With regard to Listing 1.04, "Disorders of the Spine," the Code of Federal Regulations states:

> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:

A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position more than once every 2 hours;

or

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.04.

Regarding whether a claimant can "ambulate effectively," the Regulations state:

(1) *Definition*.  Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . .

(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school . . . The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Part 404, Subpart P, Appendix 1, Listing 1.00B2b.

As can be seen, in order to meet Listing 1.04A, Plaintiff must show that he has one of the stated conditions resulting in the compromise of a nerve root (including the cauda equina) or the spinal cord, along with pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and a positive straight-leg raising test (since he is claiming lower back involvement). Similarly, in order to meet Listing 1.04B, Plaintiff must show that he has one of the stated conditions resulting in the compromise of a nerve root (including the cauda equina) or the spinal cord, along with spinal arachnoiditis, confirmed by an operative note, pathology report, or appropriate medically acceptable imaging, that is manifested by severe burning or painful dysesthesia, resulting in the need for changes in position more than once every 2 hours. Finally, in order to meet Listing 1.04C, Plaintiff must show that he has one of the stated conditions resulting in the compromise of a nerve root (including the cauda equina) or the spinal cord, along with the inability to ambulate effectively.

The ALJ discussed the medical evidence concerning Plaintiff's back problems, and the limitations resulting from these conditions at length as follows:

> In terms of the claimant's alleged back and neck pain resulting from a motor vehicle accident on March 23, 2001, the evidence does not support his allegation of disabling symptoms. On May 29, 2001, he had an MRI of his cervical spine that was unremarkable. On June 12, 2001, he had normal MRI of the thoracic spine. On June 12, 2001, a MRI of the lumbar spine demonstrated large disc extrusion on the left side at L5-S1 causing focal exiting and traversing nerve root compression (Exhibit B9F, p. 3). Treatment records from Neurosurgical Associates dated December 21, 2001 to October 8, 2002 show complaints of lower back pain with left leg pain and right-sided numbness, headaches and neck pain. A December 27, 2001 MRI of the lumbar spine shows a large central and left paracentral disc bulge/herniation, which produces an extrinsic pressure defect on the ventral surface

of the thecal sac and abuts and displaces the left S1 nerve root.
Minor bilateral facet hypertrophy is present, as is moderate canal
stenosis and minor left neural foraminal (Exhibit B2F, p. 11). In
February 2002, the claimant was examined by Dr. Clinton for
reported neurological symptoms with some reduced motion testing
and tenderness but intact motor, sensory and reflex testing with
negative straight leg raising testing. His gait was normal (Exhibit
B2F).

MRIs performed in 2003 showed disc extrusion on left S1 nerve
root (Exhibit B3F, p. 4). MRI of the cervical spine reveals several
bulging discs or protruding discs, which were most significant at
the C5-C6 and C6-C7 level without evidence of central canal
stenosis or neural foraminal stenosis (Exhibit B3F, p. 3). The
August 22, 2003 MRI of the thoracic spine was normal. Further,
the EMG nerve conduction study showed no peripheral
neuropathy, no polyneuropathy, and no cervicolumbar
radiculopathy identified electrically. In addition, when Dr.
Douglas Mathews, neurosurgeon, examined the claimant on
February 6, 2002, he was found to walk with a normal gait
(Exhibit B9F, p. 5). On a physical examination at the VA Hospital
in October 2003, it is noted that the claimant has 5/5 motor
strength in upper and lower extremities bilaterally, and his reflexes
are intact. The claimant was discharged from neurosurgery and
from pain management. A December 2003 EMG performed at the
VA Hospital shows abnormal history of chronic left L5
radiculopathy. The claimant has been treated conservatively with
pain medications through treating physicians at the VA Hospital in
Nashville, Tennessee and in Atlanta, Georgia, as well as through
private treating physicians (Exhibits B1F, B2F, B3F, B4F, B8F,
B9F, B12F and B13F). The claimant testified at the telephonic
hearing on March 23, 2012 that his treating neurosurgeon, Dr.
Mathews, suggested surgery in 2005, but he told him to wait as
long as possible to have the surgery.

The claimant testified that he had severe pain in his lower back and
neck, numbness in his left leg and foot, and numbness and
weakness in non-dominant left upper extremity. He testified that
his worst problem was limited mobility. However in a deposition
of the claimant's treating neurosurgeon, Dr. Mathews, dated
October 31, 2008, Dr. Mathews testifies [*sic*] that he first saw the
claimant in December 2001. Dr. Mathews testified that when he
saw the claimant again on February 6, 2002, he walked with a
normal gait (Exhibit B9F, p. 5). Dr. Mathews testified that

pursuant to a December 27, 2007 treatment record from him, the claimant reports his pain is worse with mowing the lawn, doing outstretched work, bending and squatting. Upon physical examination on December 27, 2007, Dr. Mathews testified that the claimant had full strength and diminished reflexes. He had some tenderness in the lumbar region on the left and a positive straight leg raise on the right at 90 degrees and negative on the left. He had decreased sensation on the lateral part of his left leg. His sensation was intact to scratch and light touch in his upper extremities. Dr. Mathews testified that the claimant's medications at the time were Lortab, Methocarbamol, Elavil and Prilosec (Exhibit B9F, p. 5).

The imaging confirms some degenerative changes but not debilitating changes. The January 25, 2008 MRI of the lumbar spine shows degenerative changes in the lumbar spine and loss of signal within intervertebral discs at L3-L4, L4-L5, and L5-S1. There was a posterior bulge at L4-L5 with a small annual tear on the right, mild bilateral facet arthropathy, and mild ligamentum flavum hypertrophy. L5-S1 shows moderate central and paracentral disc herniation present at this level, greater on the left, which [*sic*] a small annular tear and some displacement of the S1 spinal nerve (Exhibit B9F, p. 6). The January 24, 2008 MRI of the cervical spine reveals some mild degenerative disc disease at C3-C4 but no central canal foraminal stenosis. C4-C5 shows mild central and paracentral broad-based disc protrusion, left uncovertebral disc osteophytes complex circumferential bulge but no central canal stenosis. C6-C7 shows a left uncovertebral hypertrophic changes but no canal stenosis (Exhibit B9F, p. 6).

A comprehensive examination was performed by Dr. Nick Stowell on April 9, 2010 and the findings therein are inconsistent with the claimant's allegation of disability. The claimant's exam was essentially normal except for mild to moderate diminished range of motion in lumbar spine, cervical spine, and hips. Dr. Stowell notes diminished range of motion in lumbar spine flexion at 80 degrees (instead of normal 90 degrees), extension at 10 degrees ( [*sic*] normal = 25 degrees), and right and left lateral flexion at 15 degrees bilaterally (normal = 25 degrees). Cervical flexion was 40 degrees (normal = 50 degrees), extension was 40 degrees (normal = 60 degrees), right lateral flexion was 30 degrees (normal = 45 degrees), left lateral flexion was 20 degrees (normal = 45 degrees), right rotation was 60 degrees (normal = 80 degrees), and left rotation was 40 degrees (normal = 80 degrees). Abduction range

of motion in both hips were minimally diminished at 30 degrees
(normal = 40 degrees). Active flexion of both hips was 95 degrees
(normal = 120 degrees), and passive flexion of both hips was 100
degrees (normal = 120 degrees). Dr. Stowell notes that the
claimant had full range of motion of the shoulders, elbows, wrists,
hands/fingers and knees and ankles. He had 5/5 motor strength in
all major muscle groups in upper extremities and lower extremities
bilaterally. Pulses were 2+ bilaterally in the carotids, radials,
femorals, dorsalis, pedis, and posterior tibial areas. Extremities
did not show any cyanosis, clubbing or edema. Dr. Stowell notes
that he found no tenderness, redness, swelling, spasm, joint
enlargement, or muscles wasting in any joint examined, including
neck and back. Dr. Stowell notes that the claimant's mobility is
normal and his ability to grasp and manipulate objects with both
hands are [sic] normal. Grip strength is 160 pounds in his
dominant right hand and 130 pounds in his non-dominant left
hand. Dr. Stowell notes that the claimant is able to ambulate
without the use of an assistive device. Straight leg raising tests are
negative bilaterally. Dr. Stowell notes that although the claimant
was obese at a height of 71 inches and weight of 249 pounds, it did
not adversely affect his ability to walk, twist, turn, bend and lift
(Exhibit B14F).

Dr. Stowell diagnoses the claimant as follows: (1) Lumbosacral
disease, chronic lower back pain, discomfort with lifting and
activity, arm/leg discomfort/numbness secondary to knee disease.
Claimant states they are becoming progressively worse and may
improve with surgery and treatment; (2) Gastroesophageal reflux
disorder–medically controlled with prescribed medication; and (3)
Hypertension–medically controlled with prescribed medication.
Dr. Stowell notes that the claimant's blood pressure was 128/93.
Dr. Stowell opines that the claimant retains the physical capacity
to perform the following: (A) Occasionally lift and/or carry
(including upward pulling) for up to 1/3rd of an 8-hour workday a
maximum of 20 pounds because of back problems; (B) Frequently
lift and/or carry from 1/3rd to 2/3rds of an 8-hour workday a
maximum of 10 pounds because of back problems; (C) Stand
and/or walk (with normal breaks) for a total of at least 2-hours in
an 8-hour workday because of back problems; and (D) Sit (with
normal breaks)–no restrictions (Exhibit B5F).

Overall, the medical evidence shows that the claimant has had
limited treatment, which has been conservative and sporadic.
Treatment records from the VA Hospital and private treating

physicians show routine follow-up visits to get refills on his pain medications as needed. This would support that pain medications adequately control his back and neck pain, and these impairments are stable (Exhibits B1F, B2F, B3F, B4F, B8F, B9F, B12F, B13F). The Administrative Law Judge notes that at the first telephonic hearing held on March 23, 2012, the claimant testified that he had been incarcerated since August 2011 in the Warren County Jail. He testified that he was currently taking Elavil for neurological problems, 80 mg of Oxycontin twice a day for pain, Coreg for blood pressure, a diuretic to help with fluid buildup, Prilosec for acid reflux, and 2 mg of Xanax twice a day for anxiety due to February 2010 diagnosis of cirrhosis of the liver. However, at the second telephonic hearing held on May 11, 20102 [*sic*], the claimant testified that he had been seen by a nurse practitioner twice since his incarceration beginning in August 2011. He testified that the jail medical personnel are no longer giving him any type of pain medications, not even Tylenol, due to liver problems . . .

. . .

. . . Furthermore, the claimant has not had to recently seek emergency room treatment and/or been hospitalized overnight for symptoms from back and neck pain. He has not had had [*sic*] any recent physical therapy and/or epidural injections. The claimant does not use an assistive device to walk or wear a brace.

TR 26-29, *citing* TR 245-85, 314-37, 347-71.

As can be seen, the ALJ appropriately considered the medical evidence regarding Plaintiff's back problems, and properly determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equals one of the listed impairments. TR 23.

Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or medically equal a Listing, Plaintiff's argument on this point fails.

**3. Subjective Complaints of Pain**

Plaintiff also essentially contends that, in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his complaints of pain. Docket No. 27. Specifically, Plaintiff contends that the ALJ did not properly factor in the severe pain that his back injury causes him. *Id.*

Defendant responds that the ALJ presented a number of reasons explaining her decision not to accord full credibility to Plaintiff's subjective complaints. Docket No. 39. Recounting the evidence discussed by the ALJ, Defendant argues that the medical evidence and Plaintiff's reported daily activities contradict his assertion that he is disabled. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6ᵗʰ Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6ᵗʰ Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6ᵗʰ Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6ᵗʰ Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6ᵗʰ Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of his back pain were not entirely credible. TR 26. Specifically, the ALJ discussed Plaintiff's testimony regarding his limitations as follows:

> At the first telephonic hearing on March 23, 2012, the claimant testified that he has been incarcerated in Warren County Jail in Bowling Green, Kentucky since August 2011 on charge [*sic*] of counterfeit currency. He testified that he could not work before March 31, 2004, date last insured, due to injuries from a car accident on March 23, 2001. The claimant testified that he has problems using his left hand and his left leg as they go numb. The claimant testified he can stand for 15-30 minutes before his feet start tingling and his left leg goes numb. The claimant testified that his left leg/feet do better if he is wearing shoes. He testified that before March 31, 2004, he did not have enough strength to [*sic*] in his hands to pick up some items. The claimant testified that he cannot use his fingers to pick up small things with his hands. He testified that he has pain in his neck and back due to

disc injuries from the motor vehicle accident on March 23, 2001. The claimant testified that his neurosurgeon, Dr. Mathews, suggested surgery in 2005, but he told him to wait as long as possible to have the surgery. He testified that VA has also recommended that he have back surgery. The claimant testified that he has seen Dr. Mathews off and on since December 12, 2001. He testified that Dr. Mathews told him not to bend over from the waist, not to do any heaving [*sic*] lifting and not to wear restrictive clothing. The claimant testified that he last saw Dr. Mathews was [*sic*] the end of 2010, as he had moved. He testified that the last times he was at the VA Hospital for treatment was [*sic*] in August 2011 and September 2011. The claimant testified that in the Warren County Jail, he lives in an open dormitory and eats at a picnic table. He testified that he has to sweep the floor every ten days. The claimant testified that he walks a short distance to get his meal tray. He testified that he has cirrhosis, and he is on a liver transplant list. The claimant testified that he weighs 220 pounds, and he takes Coreg for his blood pressure and a diuretic to help with fluid buildup. He testified that he takes Elavil in the evening, and he takes medication for reflux. The claimant testified he takes 80 mg of Oxycontin twice a day. He testified that he takes 2 mg of Xanax twice a day, which is for his anxiety in worrying about diagnosis of cirrhosis of the liver. The claimant testified that he does not have problems being around people, but he has to be careful what he touches because of his immunity problem since his diagnosis of cirrhosis of the liver in February 2010. He testified that the number of hours he could function during an eight-hour day depends on the environment due to reduced energy associated with cirrhosis of the liver.

At the second telephonic hearing held on May 11, 2012, the claimant testified that he tried unsuccessfully to seek representation from the list that was provided to him by the Louisville ODAR. He testified that his worst problem was his limited mobility. The claimant testified that he cannot stand long due to pain in his lower back and his left leg going numb. He testified that he has to sit/stand or lie down throughout the day. The claimant testified that if he stands too long, his left leg begins to tingle, which varies from 15-20 minutes depending on the shoes he is wearing. He testified that he cannot bend over from the waist for more than a minute or two and then he as [*sic*] to get up. The claimant testified that when he first stands up, he always gets dizzy and has to hold on to something so that he does not fall. He testified that he cannot hold his head up for too long when he

shaves, as he gets dizzy and then has to put his head back down. The claimant testified that he is able to sit for 15-20 minutes at the computer and during this time, he holds his head down. He testified he has the ability to stand, to walk and to bend for no more than 15 minutes. The claimant testified that he cannot use his non-dominant left arm to support his weight, but instead he uses his right hand. He testified that at the present day in jail, a picnic table he eats on is about 10 feet from his bed. The claimant testified that during the day he goes back and forth from his bed to the bathroom and to the picnic table. He testified that during the day, he either sits, walks, stands or lies down. The claimant testified that his meals are brought to his dormitory room.

The claimant testified that presently the jail personnel are not giving him any type of pain relief medications. The claimant testified that he is presently taking Coreg for blood pressure, Maxide for edema, Elavil for neurological problems, Lopid for triglycerides, Crestor or Lipitor for cholesterol, and Prilosec for digestive problems. He testified he could not take Tylenol due to liver problems. The claimant testified that at the jail, they have a doctor that comes in to see the inmates once every six months and a nurse practitioner who comes in to see the inmates twice a month. He testified that he has seen the nurse practitioner twice since his incarceration beginning in August 2011. The claimant testified that his current weight was 225-230 pounds. He testified that he previously worked as a single district truck driver and worked his way up to being a broker for JB Hunt. The claimant testified that diagnosis of cirrhosis of the liver was diagnosed by Dr. Benne. He testified that Dr. Benne told him not to eat fried fatty foods, to eat healthy high fiber foods, and to take vitamins and nutritional supplements. The claimant testified that Dr. Benne told him to be careful when handling garbage due to lowered immunity from depleted red blood cells. He testified that the bulging discs in his neck causes his left arm to tingle when he awakes in the morning. The claimant testified that he does not drive a lot due to a lot of sitting causing his left leg to go numb. He testified that he urinates frequently due to taking a diuretic.

TR 24-25, *referencing* TR 418-32, 438-43, 458, 464, 477, 483-91, 493-94, 500-03.

As the medical records recounted by the ALJ demonstrate, Plaintiff ambulated with a normal gait, had full strength in all of his extremities, and only mild to moderate restrictions in

range of motion in his neck and back.  TR 277, 279.  These records support the ALJ's finding that Plaintiff was not as severely limited as he claimed at his hearing.  Moreover, Plaintiff reported that he could "take care of his personal hygiene, prepare meals, and complete basic household chores," and that he could also "independently drive and shop for groceries."  TR 29, *referencing* TR 216-18.

As can be seen in the quoted passages above, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered.  TR 24-29.  It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination.  *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly

state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the objective medical evidence, the ALJ determined that "the claimant has severe impairments that cause limitations of his ability to perform work activities" but:

> [t]he evidence shows only limited, sporadic, and conservative medical treatment and his symptoms have responded favorably to treatment and medications. The evidence shows the claimant's impairments are stable with no hospitalizations or extensive treatment being required. Accordingly, the totality of the evidence fails to support the severity of the alleged symptoms and limitations.

TR 30.

The ALJ assessed all of Plaintiff's medical records, reached a reasoned decision, and articulated the basis for that decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge