IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CALVIN D. STRANGE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12-cv-01264 |
| v. | ) | |
| | ) | Judge Nixon |
| CAROLYN W. COLVIN, | ) | Magistrate Judge Knowles |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is *pro se* Plaintiff Calvin D. Strange, Jr.'s Motion for Judgment

("Motion") (Doc. No. 26), filed with a Brief in Support (Doc. No. 27). Defendant Commissioner

of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion. (Doc.

No. 39.) Magistrate Judge Knowles issued a Report and Recommendation ("Report"),

recommending that Plaintiff's Motion be denied and the decision of the Social Security

Administration be affirmed. (Doc. No. 40 at 22.) Plaintiff filed an objection to the Report.

(Doc. No. 47.) For the reasons stated below, the Court **ADOPTS** the Report in its entirety and

**DENIES** Plaintiff's Motion.

## I.    PROCEDURAL BACKGROUND

Plaintiff protectively filed an Application for Disability Insurance Benefits ("DIB") on

January 22, 2010, and filed an application for Supplemental Security Income ("SSI") on

February 12, 2010, alleging disability due to injuries from a car accident on March 23, 2001.

(Tr. 69, 153, 182, 187.)[1]

---

[1] An electronic copy of the administrative record is docketed at Doc. No. 22.

The Social Security Administration ("SSA") denied Plaintiff's applications initially (Tr. 91–92, 96–98) and upon reconsideration (Tr. 93–94, 106–07). Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ") on July 1, 2010. (Tr. 80, 99.) As he was incarcerated in Warren County Jail in Bowling Green, Kentucky, Plaintiff waived his right to appear in person at his hearing and agreed to appear via telephone. (Tr. 151–52.) ALJ Candace Shaughnessy conducted a telephonic hearing on March 23, 2012, and a supplemental telephonic hearing on May 11, 2012. (Tr. 411, 473.) ALJ Shaughnessy received testimony from Plaintiff at both telephonic hearings, as well as vocational expert ("VE") William Harpool at the first hearing, and VE Tina Stambaugh at the second hearing. (*Id.*)

On May 25, 2012, ALJ Shaughnessy issued an unfavorable decision, finding that Plaintiff was not disabled under the meaning of the Social Security Act. (Tr. 13–32.) Specifically, ALJ Shaughnessy made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 22, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of cervical spine and degenerative disc disease of lumbar spine (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he requires a sit/stand option every 30–60 minutes, which takes no more than 1–5 minutes without his leaving the work station. He is limited to occasional bending but no crawling, no climbing ladders, ropes or scaffolds, and

2

no work around unprotected heights. Further, the claimant is limited to unskilled tasks due to subjective complaints of pain in neck and left upper extremity, back, and lower extremities.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on February 7, 1965 and was 44 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 22, 2010, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18–31.)

Plaintiff sought review of ALJ Shaughnessy's decision from the Appeals Council. (Tr. 11.) On November 19, 2012, the SSA Appeals Council declined to review the case (Tr. 7–9), thereby rendering the decision of ALJ Shaughnessy the final decision of the Commissioner.

Plaintiff filed this action on December 4, 2012, to obtain judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). (Doc. No. 1.) Pursuant to Magistrate

Judge Knowles's order of February 19, 2012 (Doc. No. 23), Plaintiff filed a Motion for Judgment with a Brief in Support on March 20, 2013 (Doc. Nos. 26; 27). The Commissioner filed a Response on June 18, 2013. (Doc. No. 39.) Magistrate Judge Knowles issued the Report on July 22, 2013, recommending that Plaintiff's Motion be denied. (Doc. No. 40.) Plaintiff filed an objection to the Report on September 24, 2013. (Doc. No. 47.)

## II.   FACTUAL BACKGROUND

As noted previously, Plaintiff alleges disability due to injuries sustained from a car accident on March 23, 2001, including herniated discs, "tumors of the spine," "tears of the spine," "back problems, legs, arms, balance problems, [gastroesophageal reflux disease] . . . and high blood pressure." (Tr. 69, 94, 153, 182, 187.) Additionally, Plaintiff alleges disability due to depression, anxiety, and posttraumatic stress disorder. (Tr. 94, 209, 312.)

*A. Physical Impairments*

Plaintiff claims his disabling symptoms stem from a motor vehicle accident on March 23, 2001. (Tr. 245, 296.) The Court notes that not all the evidence relied on by ALJ Shaughnessy is contained in the record in the form of medical reports. However, Jane Howard, M.D., of the Veterans Administration ("VA") Hospital, and Douglas Mathews, M.D., of Neurological Surgeons, P.C., testified about these missing reports in depositions taken on October 19, 2006, March 1, 2007, and October 31, 2008. (Tr. 260, 276, 324.)

Dr. Howard testified that a May 29, 2001, MRI of Plaintiff's cervical spine was unremarkable. (Tr. 267.) Dr. Mathews testified that on June 12, 2001, a report from WellStar Cobb Hospital showed a normal thoracic spine MRI but that Plaintiff's lumbar spine MRI "demonstrated large disc extrusion on the left side at L5-S1 causing focal exiting and traversing nerve root compression." (Tr. 326.) Due to complaints of neck and low back pain, Plaintiff was referred by Cobb County Detention Center, where he was incarcerated, to Dr. Michael Fleming

4

of Northwest Neurological Associates, P.C., who reported on June 28, 2001, that Plaintiff's "[c]ervical spine MRI is unremarkable. Thoracic spine is unremarkable. Lumbar spine shows degenerative disc disease at L5 S1 with some degree of osteophyte formation and there is a paracentral disc protrusion to the left." (Tr. 247.)

On December 27, 2001, William S. Witt, M.D., reported a MRI of Plaintiff's lumbar spine showed "a large, 5–6 mm, central and left paracentral disc bugle[sic]/herniation, which . . . produces an extrinsic pressure defect on the ventral surface of the thecal sac and abuts and displaces the left S1 nerve root." (Tr. 259.)

Dr. Mathews testified that he first examined Plaintiff on December 21, 2001, at which time Plaintiff complained of weakness, numbness, and tingling in his right foot and pain in his left leg that radiated down to his heel. (Tr. 325–26.) However, regarding Plaintiff's second visit on February 6, 2002, Dr. Mathews testified that Plaintiff walked with a normal gait and that the weakness in Plaintiff's right foot appeared to have gone away. (Tr. 328.) From December 21, 2001, to October 8, 2002, Dr. Mathews's records reflect that Plaintiff complained of lower back pain with left leg pain and right-sided numbness, headaches, and neck pain. (Tr. 250–59.)

Dr. Howard testified that an MRI of Plaintiff's cervical spine performed on August 22, 2003, revealed "several bulging discs or protruding discs which were most significant at the C5–6 and C6–7 level without evidence of central canal stenosis or neural foraminal stenosis." (Tr. 262.) She noted that the August 2003 MRI showed a larger disc extrusion than the MRI taken in December 2001: "[i]nstead of being 5 to 6 millimeters in 2003, it's reported to be 2.8 by 1.1 by 1.6 centimeters." (Tr. 263.)

On October 10, 2003, Bruce A. Davis, M.D., conducted a consultative examination of Plaintiff and opined that Plaintiff could perform less than a full range of work activity at the light

5

level, but added that Plaintiff should avoid climbing, heights, squatting, and forceful grip. (Tr. 409–10.)

Dr. Mathews testified that he performed a physical examination of Plaintiff in December 2007, finding Plaintiff had "full strength . . . diminished reflexes . . . some tenderness in the lumbar region on the left and a positive straight leg raise on the right at 90 degrees and negative on the left." (Tr. 328.) Dr. Mathews additionally testified that a January 24, 2008, cervical study revealed

> some mild degenerate disc disease at C3–4 but no central canal foraminal stenosis. C4–5 shows mild central and paracentral broad-based disc protrusion, left uncovertebral disc osteophyte complex resulting in mild left neuroforaminal narrowing but no canal stenosis. 5–6 shows a circumferential bulge but no canal stenosis. C6–7 shows a left uncovertebral hypertrophic changes but no canal stenosis.

(Tr. 329.) A January 25, 2008, MRI of the lumbar spine

> showed degenerative changes . . . loss of signal within intervertebral discs at L3–4, L4–5 and L5–S1. And they noted a posterior bulge at L4–5 with a small annular tear on the right, mild bilateral facet arthropathy, mild ligamentum flavum hypertrophy. L5–S1 shows moderate central and paracentral disc herniation present at this level, greater on the left, associated with small annular tear . . . [and] displacement of the left S1 spinal nerve.

(*Id.*) He opined that based on the medical evidence, "it appears . . . more likely than not, that the wreck caused that injury and his lumbar radicular syndrome and herniated disc." (Tr. 331.) Dr. Mathews recommended the following permanent restrictions on Plaintiff's physical activity: no repetitive lifting over twenty-five pounds, no crawling, and no climbing at unprotected heights. (Tr. 332.)

Scott Ward conducted a comprehensive examination of Plaintiff on April 9, 2010, which was also signed by Nick Stowell, M.D., finding Plaintiff's physical health was essentially

normal, except for mild to moderate diminished range of motion in the lumbar spine, cervical spine, and hips. (Tr. 367–71.) Additionally, the report noted Plaintiff was able to ambulate well without the use of an assistive device. (Tr. 367.) Ward and Stowell diagnosed Plaintiff with: "Lumbosacral Disease. Chronic Lower Back Pain. . . . Gastroesophageal Reflux Disorder, Medically Controlled. Hypertension, Medically Controlled," and opined that Plaintiff retained the RFC to occasionally lift and/or carry for up to one-third of an eight-hour workday a maximum of twenty pounds, frequently lift and/or carry from one-third to two-thirds of an eight-hour workday a maximum of ten pounds, stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, and sit with normal breaks without restrictions. (Tr. 370–71.)

On September 2, 2010, Marvin H. Cohn, M.D., conducted a physical RFC assessment as part of Plaintiff's application for benefits, and found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk with normal breaks for at least two hours in an eight-hour workday, and sit with normal breaks for about six hours in an eight-hour workday. (Tr. 287.) He opined Plaintiff should be limited to occasionally climbing ramps, stairs, ladders, ropes and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; and should avoid concentrated exposure to hazards such as heights due to balance problems. (Tr. 288, 290.)

During the March 23, 2012, telephonic hearing, Plaintiff testified that he had been incarcerated in Warren County Jail in Bowling Green, Kentucky, since August 12, 2011, on a charge of possessing counterfeit currency. (Tr. 419.) He testified that due to injuries from his March 23, 2001, motor vehicle accident, he had pain in his neck and back, had problems using his left hand and leg, and could only stand for fifteen to thirty minutes. (Tr. 421–23.) He stated

7

that, while incarcerated, he was living in an open dormitory where he would eat at a picnic table about six feet away from his bed and had to sweep the floor every eight to ten days. (Tr. 438–40, 488.) He claimed he had cirrhosis, was on a liver transplant list, and took the following medications: "Prilosec . . . for digestive problems"; "Elavil for the neurological problems"; "Coreg [sic] for blood pressure"; "Maxzide for edema"; "Lopid for the triglycerides"; "Crestor or Lipitor [in generic form] for cholesterol"; and Xanax for anxiety. (Tr. 489, 440–43.)

During the May 11, 2012, telephonic hearing, Plaintiff testified that he could not stand for very long, bend over at the waist for more than a minute or two, or hold his head up for too long without getting dizzy. (Tr. 483–84.) He additionally testified that the jail medical personnel were not presently giving him any type of pain relief medication due to his liver problems. (Tr. 489–90.)

*B. Mental Impairments*

Plaintiff has intermittently taken psychotropic medication for depression and anxiety, prescribed by his primary care providers at the VA Hospital and through private treating physicians. *(See, e.g.*, Tr. 295–96, 323.)

On July 13, 2010, Carey F. Browder, M.D., Plaintiff's primary care provider, diagnosed depression, placed a question mark in front of a diagnosis of posttraumatic stress disorder, and prescribed Plaintiff Prozac. (Tr. 323.)

On October 19, 2010, Robert N. Doran, M.A., conducted a DDS Psychological Evaluation of Plaintiff as part of Plaintiff's application for benefits. (Tr. 295–99.) Mr. Doran diagnosed "Anxiety Disorder Not Otherwise Specified . . . A primary provisional diagnosis of Narcissistic Personality Disorder . . . [and a] rule out diagnosis of Personality Change Due to Head Trauma," but noted there was no indication of psychosis. (Tr. 297.) Mark Phillips, Ph.D.,

8

reviewed Mr. Doran's report and concurred with the findings. (Tr. 298.) In a Psychiatric Review Technique dated November 5, 2010, State agency psychological consultant Robert De La Torre, Psy.D., concluded Plaintiff's mental impairments were not severe. (Tr. 300.)

## III.  STANDARD OF REVIEW

"The handwritten pro se document is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). On the other hand, district courts are not "required to create" a pro se litigant's claim for him. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003); *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits.").

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Therefore, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d

9

642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## IV.    ALJ SHAUGHNESSY'S DECISION

To be eligible for DIB and SSI, a claimant has the ultimate burden to establish he or she is entitled to benefits by proving his or her

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (2012); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> 1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> 2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

10

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity ("RFC") (e.g., what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5. At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. § 416.920(a) (2014); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Here, ALJ Shaughnessy found under the five-step analysis that (1) Plaintiff had not engaged in substantial gainful activity since January 22, 2010, the application date; (2) Plaintiff's degenerative disease of cervical spine and degenerative disc disease of lumbar spine are considered "severe"; (3) Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) transferability of job skills is not material because Plaintiff is "not disabled"; and (5) considering Plaintiff's age, experience, and education, Plaintiff has the RFC to perform light work except that he requires a sit/stand option every 30–60 minutes, which takes no more than 1–5 minutes without leaving his work station; he is limited to occasional bending, but no crawling, no climbing ladders, ropes or scaffolds, and no work around unprotected heights; and he is limited to unskilled tasks due to subjective complaints of pain in neck and left upper extremity, back, and lower extremities. (Tr.

---

[2] The Listing of Impairments is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2014).

18–31.) ALJ Shaughnessy concluded that Plaintiff had not been under a disability at any time through the date of her decision. (Tr. 31.)

## V. OBJECTIONS

Plaintiff raises a number of objections to Magistrate Judge Knowles's Report. (Doc. No. 47.) Because Plaintiff proceeds *pro se*, the Court interprets his objections liberally. *See Haines*, 404 U.S. at 520; *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 n.1 (6th Cir. 2010).

First, Plaintiff appears to argue that Magistrate Judge Knowles erred in concluding that ALJ Shaughnessy's decision was supported by substantial evidence because medical records were missing from the record at the time of the hearing. (Doc. No. 47 ¶¶ 2–16.) Second, Plaintiff contends ALJ Shaughnessy improperly relied on VE testimony in concluding that work existed in the national economy that Plaintiff could perform. (*Id.* ¶¶ 17–20.) The Court notes that Plaintiff did not raise his second objection in his Motion for Judgment, *see United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) ("issues raised for the first time in objections to [a] magistrate judge's report and recommendation are deemed waived"), but because he proceeds *pro se*, the Court will nonetheless consider the objection. *See Haines*, 404 U.S. at 520; *Wright-Hines*, 597 F.3d at 396 n.1. The Court will also consider Plaintiff's two additional statements of error from his Motion for Judgment that Magistrate Judge Knowles addressed, but which Plaintiff failed to preserve in his Objection: (1) ALJ Shaughnessy erred in determining that Plaintiff did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and (2) ALJ Shaughnessy did not properly consider Plaintiff's subjective complaints of pain. (Doc. No. 27 ¶¶ 27–43, 46, 49–52.)The Court addresses each objection in turn.[3]

---

[3] Plaintiff additionally objects that "a document that was authored by the ALJ on May 25, 2012 . . . is missing from the record or the document delivered to the plaintiff was delivered to thwart the plaintiff's ability to effectively

*A. Incomplete Record*

First, Plaintiff contends that Magistrate Judge Knowles erred in concluding ALJ

Shaughnessy's disability determination was proper because the record before ALJ Shaughnessy

was incomplete, with "hundreds of pages of medical documents missing." (Doc. No. 47 ¶ 2.)

Plaintiff claims ALJ Shaughnessy acknowledged that the record was missing documents, and

refers to the following testimony: (1) ALJ: "the records that I have before me show that I have

Exhibits B1A to B2A, B1B to B16B, B1D to B8D; I have B1E to B11E, and B1F to B9F. . . .

Have you looked at your records?" CLMT: "I have not" (Tr. 416); (2) "But I don't have those

records, so I'm going to make a list and get those" (Tr. 446); (3) "And I have your notes. I want

to get those records and look at that" (Tr. 466); (4) "Well, I don't have those records, so I'm

going to have to get those" (Tr. 460); (5) "So we do have additional records that I'll need to look

at" (Tr. 418); (6) "I have notes that I need to get updated records from Dr. Browder, Dr.

Matthews [sic], check about the lab reports . . . from Harrison County, check and see what

Warren County Jail has, the VA in Nashville, and the VA in Kansas City" (Tr. 463); (7) ALJ:

"Did you ever get to review the records that were sent to us?" CLMT: "No, ma'am" (Tr. 477);

and (8) "Now, without you having seen it, I have reviewed the evidence that we had before, so

I'll tell you what I have in the file right now. And that will include the records from before and

the updated records" (Tr. 478). (Doc. No. 47 ¶¶ 6–13.)

Plaintiff acknowledges that in response to ALJ Shaughnessy's question as to whether

Plaintiff was aware of any other records he thought she should have, he answered: "No, there

---

litigate the action." (Doc. No. 47 ¶¶ 4, 17.) The Court notes that ALJ Shaughnessy's May 25, 2012, opinion is
included in the record at Tr. 13–32 and Plaintiff did not include a copy of the allegedly different document. As
such, the Court is unable to address this objection.
The Court also notes that despite alleging disability due to depression, anxiety, and posttraumatic stress disorder,
Plaintiff does not contend that ALJ Shaughnessy erred in concluding that Plaintiff's mental impairments were non-
severe in either his Motion for Judgment or his Objection. (*See* Doc. Nos. 27, 47.)

shouldn't be any." (*Id.* ¶¶ 14–15 (referencing Tr. 481).) He contends, however, that his answer was in response to the "on the record discussion of the records recognized as missing, where the ALJ had already discussed what she needed to get and not based [sic] upon a complete record." (*Id.* ¶ 15.) Thus, Plaintiff argues, although the hearing record reflects he acknowledged ALJ Shaughnessy had all the relevant records, that statement is "presented out of context." (*Id.* ¶ 14.)

"The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw*, 803 F.2d at 214 (citing 20 C.F.R. §§ 416.912, 416.913(d)). However, when a claimant is without counsel and unfamiliar with hearing procedures, an ALJ has a special, heightened duty to develop a full and fair record. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983).

As Plaintiff proceeded *pro se* at the hearing and throughout this case, ALJ Shaughnessy had a special, heightened duty to develop a full and fair record given Plaintiff's *pro se* status. Upon review of the record, the Court finds she fulfilled her heightened duty. The parts of the record that, according to Plaintiff, evidence its incompleteness (Tr. 416, 418, 446, 460, 463, 466) are from the first hearing before ALJ Shaughnessy on March 23, 2012. At the conclusion of the first hearing, ALJ Shaughnessy told Plaintiff "I am not making a decision yet, because I need more records," and stated "it's going to take at least 30 days to get these extra records and for me to see them and go through them." (Tr. 466, 470.) On May 11, 2012, over thirty days after the first hearing and after receiving additional records, ALJ Shaughnessy conducted a second, supplemental hearing. (Tr. 473–521.) When Plaintiff told ALJ Shaughnessy that he had not reviewed the updated records (Tr. 477), ALJ Shaughnessy described the updated records in detail:

Now, without you having seen it, I have reviewed the evidence that we had before, so I'll tell you what I have in the file right now. And that will include the records from before and the updated records, which I will explain. . . . I have four new records in the medical records . . . 1F through 9F - - those included the evidence that you had submitted from, like, 2002 and the depositions and the state agency report. And there was that psychological evaluation that was performed in October of 2010. And I had some records from a Dr. Browder from . . . 2010/2011. Now, the newest records that I have are B10F, which includes . . . records from the Harrison County Community Hospital, which were around June 2011. And it looks like they drew some blood.

And it had those . . . chemistry reports. And those results indicate . . . glucose was a little bit elevated to 130, with the upper range being 110. Let's see - - potassium and chloride was a little low. Liver enzymes were a little bit elevated. Cholesterol triglycerides were a little bit elevated. Then I have . . . Dr. Benne's records . . . these records look to be June, July, August visits in 2011. And these visits indicate they took your weight, your pulse, your blood pressure. And they indicate that you were taking Norco and Xanax. And then I have . . . I think from - - it says Southern Health Partners. These are from August, September, October, December . . . this is what I've got through here, with some blood test results - - again, some chemistry results. Now - - and these go up through December of 2011 as best I can tell. And then I have one more exhibit, and this was from the Department of Veterans, and this one was from Tennessee Valley area. . . . And this one indicates you were seeing - - well, they have a listing of your medications, which kind of covers the period of . . . November 2010, I guess, through November 2011 . . . Looks like the last visit that I have documented was in August of 2011. And it was where you tried to get a refill of your pain medication. . . . So those are the updated ones I have in the medical file. And in the correspondence file, I have . . . a copy of the lab test that you had mailed. And then the - - what were put in the forms. And then . . . these were letters that you had written and then the acknowledgement form about Legal Aid that you had written and the copies of the letters that you received.

(Tr. 478–81.) ALJ Shaughnessy then asked Plaintiff "are you aware of any other records that

you think I should have," to which Plaintiff answered "No, there shouldn't be any." (Tr. 481.)

As indicated above, ALJ Shaughnessy provided Plaintiff a detailed and thorough explanation of

what was in the updated record. Plaintiff's subsequent indication that the record was complete was not "out of context," as Plaintiff contends. The transcript from the two hearings reflects ALJ Shaughnessy thoroughly performed her duty to develop a full and fair record.

While Plaintiff's objection is generally vague regarding which medical records he contends are missing, he does specify that the following are missing from the record: (1) an MRI taken in August 2003, (2) a nerve conduction and electromyography study from an unknown date, and (3) an MRI referenced by Dr. Fleming in his June 28, 2001, report. (Doc. No. 27 ¶¶ 40, 44.)

Pursuant to 42 U.S.C. § 405(g), a district court may remand a case and order additional evidence be taken, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148–49 (6th Cir. 1996). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "[E]vidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). Finally, "good cause" can be shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)). The claimant bears the burden of demonstrating that the case should be remanded. *Id.*

Plaintiff has failed to show that the missing records were either not in existence or not available to him at the time of the administrative proceeding. He claims both the August 2003 MRI and the nerve conduction and electromyography study were provided to the Commissioner, but provides no evidence to support this claim. (Doc. No. 27 ¶ 40.) Moreover, it is doubtful ALJ Shaughnessy would have reached a different conclusion if presented with the missing records. First, the record contains reports that reference and describe the missing records. Dr. Howard discussed the August 2003 MRI and nerve conduction study at length in her deposition taken on behalf of Plaintiff. (Tr. 262–64.) Dr. Fleming also reported and analyzed the results of Plaintiff's cervical, thoracic, and lumber spine MRIs in his June 28, 2001, report. (Tr. 247.)

Additionally, based on the references to the missing records, ALJ Shaughnessy considered them in making her determination, stating "MRIs performed in 2003 showed disc extrusion on left S1 nerve root . . . MRI of the cervical spine reveals several bulging discs or protruding discs . . . Further, the EMG nerve conduction study showed no peripheral neuropathy, no polyneuropathy, and no cervicolumbar radiculopathy identified electrically." (Tr. 26.) ALJ Shaughnessy's opinion reveals that she had adequate information concerning the contents of the missing records and used that information to conclude that Plaintiff was not disabled. Thus, the Court finds no evidence that had the missing records been provided, they would have altered the ALJ's decision and as such they are not material.

Finally, Plaintiff has not provided any justification for his failure to present the MRI evidence to the ALJ. Even considering Plaintiff's *pro se* status, unfamiliarity with the administrative procedure before the SSA, and incarceration, the Court finds Plaintiff has failed to show good cause existed for failing to incorporate this evidence into the record. For these

reasons, Plaintiff has failed to demonstrate that the case should be remanded for additional evidence to be taken into the record.

### B. Vocational Expert Testimony

Next, Plaintiff appears to argue ALJ Shaughnessy improperly relied on VE testimony in concluding that jobs exist in significant numbers in the national economy that Plaintiff can perform, given his age, education, work experience, and RFC. (Doc. No. 47 ¶¶ 17–19.) Plaintiff contends that "[b]oth of the Vocational Experts stated that the plaintiff could not perform his past relevant work and Ms. Stambaugh eliminated all other work in the national economy." (*Id.* ¶ 19.)

As discussed above, at step five of the disability evaluation process, the ALJ determines whether the claimant is able to do any other work. 20 C.F.R. § 416.920(a) (2014). At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and RFC. *Id.*; *Moon*, 923 F.2d at 1181. The ALJ may rely on VE testimony to prove the existence of a substantial number of jobs, but "the testimony must be given in response to a hypothetical question that accurately describes the plaintiff," *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994), and that is supported by substantial evidence in the record, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

ALJ Shaughnessy determined that Plaintiff has the RFC to perform light work, except he requires a sit/stand option every 30–60 minutes, which takes no more than 1–5 minutes without leaving the work station; is limited to occasional bending with no crawling, no climbing ladders, ropes, scaffolds, or work around unprotected heights; and is limited to unskilled tasks. (Tr. 23.) ALJ Shaughnessy posed a hypothetical claimant with this RFC to VE Stambaugh, who opined

that, given such limitations, the claimant could perform a limited range of light exertional work, including: (1) informational clerk, with 1,000 jobs in Kentucky and 71,000 nationwide; (2) general clerical worker, with 1,300 in Kentucky and 115,000 nationwide; and (3) order filler, with 1,700 jobs in Kentucky and 107,000 nationwide. (Tr. 509–11.) In determining that a significant number of jobs exist that Plaintiff can perform, ALJ Shaughnessy explicitly relied on this testimony of VE Stambaugh. (Tr. 31.)

If the hypothetical RFC given to VE Stambaugh accurately described Plaintiff and was supported by substantial evidence, then ALJ Shaughnessy properly relied on VE Stambaugh's testimony. *See Felisky*, 35 F.3d at 1036; *Hardaway*, 823 F.2d at 927–28. ALJ Shaughnessy relied primarily on the opinion of Dr. Mathews, Plaintiff's treating physician, in assessing Plaintiff's RFC, and additionally considered the opinions of consultative examiners Dr. Davis and Dr. Stowell, and the State agency RFC assessments by Dr. Cohn and Dr. Saul Juliao. (Tr. 29–30.) Therefore, the Court finds that ALJ Shaughnessy's RFC determination is supported by substantial evidence. As such, ALJ Shaughnessy properly relied on VE testimony.

Plaintiff points out that VE Stambaugh testified that if Plaintiff's allegations as to his own limitations were true—and Plaintiff had RFC limitations of standing for fifteen to thirty minutes, sitting for fifteen to twenty minutes, walking fifteen to twenty minutes, needing to lie down for one to two hours in an eight-hour span, with no use of the left arm or hand except as an assist, and an inability to bend over at the waist when standing—he would be unable to perform his past relevant work and any other jobs in the national economy. (Doc. No. 47 ¶ 18 (referencing Tr. 512–14).) Additionally, Plaintiff claims that if VE Harpool had been given the same hypothetical, "he to[o] would have come to the same conclusions." (Doc. No. 47 ¶ 19.) Plaintiff appears to argue that ALJ Shaughnessy erred in refusing to credit this testimony of

Plaintiff; however, Plaintiff fails to explain why ALJ Shaughnessy should have afforded credibility to Plaintiff's allegations of more severe functional capacity restrictions. (*See id.* ¶¶ 17–19.)

First, the Court agrees with ALJ Shaughnessy that her assessment of Plaintiff's RFC "allows for many of [Plaintiff's] subjective complaints and limitations." (Tr. 30.) To the extent ALJ Shaughnessy found Plaintiff's allegations concerning his limitations were not fully credible, the Sixth Circuit accords great deference to an ALJ's findings regarding the credibility of a claimant's testimony as long as the ALJ's credibility assessment is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). As previously noted, the RFC assessed by ALJ Shaughnessy is supported by substantial evidence. Additionally, the ALJ correctly concluded that the record "evidence shows only limited, sporadic, and conservative medical treatment and [Plaintiff's] symptoms have responded favorably to treatment and medications. The evidence shows [Plaintiff's] impairments are stable with no hospitalizations or extensive treatment being required." (Tr. 30.) These findings provide sufficient justification to discount Plaintiff's subjective complaints as to his additional limitations. As such, ALJ Shaughnessy properly declined to accept VE Stambaugh's testimony that Plaintiff is unable to perform any jobs in the national economy given the limitations imposed by Plaintiff's more restrictive hypothetical, as such testimony was based on Plaintiff's subjective allegations and the ALJ relied on substantial evidence in discounting those allegations.[4] *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) (finding no error where the ALJ declined the testimony of the VE "as it was based on the assumption that plaintiff's testimony was entirely credible").

*C. Meet or Equal a Listed Impairment*

---

[4] Plaintiff's subjective complaints of pain are addressed further in Part V.D.

In his Motion, Plaintiff appears to argue that ALJ Shaughnessy erred in determining that he did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Doc. No. 27 ¶¶ 49–52.) Plaintiff appears to claim that his impairments, which he characterizes as "1. Imping[e]ment on nerve roots, 2. Spinal Stenosis, 3. Herniated Nucleus Pulposus, 4. Lumbar Spinal Stenosis, 5. Osteoarthritis, 6. Degenerative disk [sic] disease, 7. Facet Arthritis, 8. Foramenal [sic] Stenosis, [and] 9. Severe pain associated with the above," meets or medically equals Listing 1.04, Disorders of the Spine. (*Id.*) Specifically, he argues that the following evidence supports a finding that he met or medically equaled Listing 1.04: (1) Dr. Witt's findings following a lumber spine MRI on December 27, 2001;[5] and (2) the information contained in Dr. Howard's deposition concerning Plaintiff's 2001 and 2003 MRIs.[6] (*Id.* ¶¶ 31–33, 38–43, 46, 51–52.)

"A claimant must demonstrate that [his] impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder." *Foster*, 279 F.3d at 354. In order to meet Listing 1.04, Disorders of the Spine, Plaintiff must show that he has one of the stated conditions "resulting in the compromise of a nerve root (including the cauda equine) or the spinal cord," along with either: (1) "pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss, and . . . [a] positive straight-leg raising test"; (2) "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or appropriate

---

[5] Dr. Witt reported:
> L5-S1: Degenerative signal loss is present in the disc. There is a large, 5–6 mm, central and left paracentral disc bugle[sic]/herniation, which extends slightly below the disc level to the left of midline. This produces an extrinsic pressure defect on the ventral surface of the thecal sac and abuts and displaces the left S1 nerve root. Minor bilateral articular facet hypertrophy is present. Moderate central stenosis. Minor left neural foraminal narrowing.

(Tr. 259.)

[6] Dr. Howard testified that the 2001 MRI of Plaintiff's lumbar spine "reports a large 5 to 6 millimeter central and left paracentral disc bulge slash herniation extending slightly below the disc level and to the left of midline producing pressure on the ventral surface of the thecal sac and abutting and displacing the left S1 nerve root." (Tr. 262–63.) Additionally, she testified Plaintiff's 2003 MRI "reports a larger disc extrusion at the same level. Instead of being 5 to 6 millimeters in 2003, it's reported to be 2.8 by 1.1 by 1.6 centimeters." (Tr. 263.)

medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;" or (3) the "inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff fails to demonstrate that his impairment satisfies the diagnostic description for Listing 1.04. While the medical records Plaintiff refers to may demonstrate Plaintiff has a herniation resulting in compromise of the spinal cord, ALJ Shaughnessy correctly concluded that

> the record does not demonstrate that he has experienced compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion, atrophy, and sensory or reflex loss, spinal arachnoiditis with severe burning or painful dysesthesia resulting in the need to change positions more than once every two hours, or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in an inability to ambulate.

(Tr. 23.) ALJ Shaughnessy acknowledged and considered Dr. Witt's report and Dr. Howard's testimony (*see* Tr. 26 ("A December 27, 2001 MRI of the lumbar spine shows . . ."; "MRIs performed in 2003 showed . . .")), but concluded that "[t]he imaging confirms some degenerative changes, but not debilitating changes," (Tr. 27).

Therefore, Plaintiff has failed to demonstrate that he meets or equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and ALJ Shaughnessy did not err in concluding that Plaintiff did not meet or equal one of the listed impairments.

*D. Subjective Complaints of Pain*

Finally, as Plaintiff refers to places in the record that support his subjective complaints of pain,[7] it appears he is arguing that ALJ Shaughnessy improperly discounted his subjective complaints. (Doc. No. 27 ¶ 40.)

As previously noted, an ALJ's findings regarding the credibility of a claimant's testimony should be given great deference by a reviewing court as long as the ALJ's credibility assessment is supported by substantial evidence. *Walters*, 127 F.3d at 531. However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036.

ALJ Shaughnessy concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25–26.) ALJ Shaughnessy described in detail the medical evidence that contradicted Plaintiff's complaints of pain, including an unremarkable cervical spine MRI in 2001, a normal thoracic spine MRI in 2003, Dr. Mathews's finding that Plaintiff walked with a normal gait in 2002, the VA Hospital's and private treating physicians' conservative treatment of Plaintiff with pain medications, and Dr. Stowell's "essentially normal" examination of Plaintiff in 2010. (Tr. 26–28.) ALJ Shaughnessy also cited information from mental status exams performed by treating physicians and consultative examiners, and self-reported activities of daily living from Plaintiff's Function Reports, indicating that Plaintiff:

> can take care of his personal hygiene, prepare meals, and complete basic household chores. He can independently drive and shop for groceries . . . [He] has not had to recently seek emergency room treatment and/or been hospitalized overnight for symptoms from

---

[7] *See, e.g.*, Deposition of Dr. Howard at Tr. 265 ("Q: And as we sit here today, do you believe this man is under pain from the injuries he sustained from this accident? A: I do.")

> back and neck pain. He has not had had any recent physical
> therapy and/or epidural injections. [He] does not use an assistive
> device to walk or wear a brace.

(Tr. 28–29.) Thus, ALJ Shaughnessy's findings as to Plaintiff's credibility are supported by

substantial evidence, and she clearly stated her reasons for her findings. The Court concludes

ALJ Shaughnessy properly discounted Plaintiff's subjective complaints of pain.

## VI. CONCLUSION

The Court finds substantial evidence in the record supported ALJ Shaughnessy's decision

and therefore **ADOPTS** the Report (Doc. No. 40) in its entirety. Plaintiff's Motion (Doc. No.

26) is **DENIED** and the decision of the Commissioner is **AFFIRMED**. The case is hereby

**DISMISSED**. By this Order, the Commissioner's pending Motion for a Stay Because of Lapse

of Appropriations (Doc. No. 48) and Plaintiff's Motion for Abeyance (Doc. No. 49) are

**TERMINATED AS MOOT.** The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the ___8___ day of August 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT